STATE OF NEBRASKA, APPELLEE, V.
LESTER WAGNER, APPELLANT.
710 N.W.2d 627

Filed March 10, 2006.    No. S-04-1104.

Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Pursuant to a plea agreement, Lester Wagner was charged by amended information with manslaughter and use of a firearm to commit a felony. Wagner entered pleas of no contest to the charges, and he was convicted and sentenced. No direct appeal was taken. Approximately 4 years after sentencing, Wagner filed a motion for postconviction relief claiming ineffective assistance of counsel because counsel failed to consult with him concerning a direct appeal. Following an evidentiary hearing, the district court denied Wagner's motion for postconviction relief.

## SCOPE OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005).

On appeal from a proceeding for postconviction relief, the lower court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003).

## FACTS

On July 2, 1998, Wagner was charged by information with first degree murder. The information alleged that Wagner killed Christopher Rucker in the perpetration of or attempt to perpetrate a robbery or burglary. Pursuant to a plea agreement, Wagner was charged via an amended information with manslaughter and use of a firearm to commit a felony. Wagner pleaded no contest to the amended charges and was subsequently sentenced to a term of 10 to 20 years in prison on the manslaughter conviction and a consecutive term of 7 to 12 years in prison on the use of a firearm conviction. He was given credit for 545 days served.

On September 5, 2003, Wagner filed a motion for postconviction relief, asserting (1) that he was denied effective assistance of counsel at trial because his trial counsel allowed him to enter a plea of no contest to use of a firearm in conjunction with a manslaughter charge and did not file a notice of appeal, (2) that the trial court lacked subject matter jurisdiction over the offense of use of a firearm to commit a felony and jurisdiction over Wagner, (3) that the State engaged in prosecutorial misconduct by allowing him to plead to the use of a firearm charge, and (4) that he was denied effective assistance of counsel on appeal because counsel did not inform Wagner that he had a right to appeal. Wagner claimed that trial counsel informed him that if a direct appeal was filed, the State would refile a felony murder charge against him.

The district court denied an evidentiary hearing on Wagner's claim that he could not be convicted of manslaughter, an unintentional crime, and use of a firearm to commit a felony, an intentional crime. The court noted that when the felony which

serves as the basis for a use of a firearm charge is an unintentional crime, the accused cannot be convicted of use of a firearm to commit a felony. See *State v. Pruett,* 263 Neb. 99, 638 N.W.2d 809 (2002). However, the court found that the firearm charge in Wagner's case was based on the underlying felony of attempted robbery, an intentional crime. Therefore, the court concluded there was no merit to this claim.

The district court found that Wagner was entitled to an evidentiary hearing on the issue of whether his trial counsel advised him concerning his right to a direct appeal and all matters related solely to that issue. At the evidentiary hearing, Wagner testified that prior to his signing the plea agreement, and as a part of his discussions with trial counsel, he was informed that the county attorney had stated that Wagner could not file a direct appeal if he accepted the plea agreement. Wagner further testified that although he was aware he would usually have a right to a direct appeal, he believed he had "forfeited" that right by executing the plea agreement. Wagner did not broach the issue of a direct appeal with his trial counsel.

Wagner's trial counsel testified that in his opinion, because Wagner entered a plea, the only issue on appeal would have been alleged excessive sentences. He had no recollection of discussing that issue or the issue of a direct appeal with Wagner. Counsel said that if he had been asked by Wagner to appeal the sentences, he would have because he had an ethical obligation to do so. Counsel stated that he typically discussed with his clients the right to appeal and the likelihood of success. Counsel recalled advising Wagner of the penalties for the two charges that were included in the plea agreement and the parameters of the sentences for those charges. He also recalled informing Wagner that he had to be truthful in his cooperation with the State. Counsel remembered informing Wagner that if he did not take the plea agreement, the State would proceed with a felony murder charge. Immediately following sentencing, counsel asked Wagner whether he was "okay" with the sentences, and Wagner responded that he was. There was no discussion concerning a direct appeal.

At the postconviction evidentiary hearing, the plea agreement was received into evidence. The agreement provided that Wagner

would truthfully disclose all information regarding his activities and those of others related to the murder of Rucker and that he would testify against certain codefendants. In exchange for Wagner's cooperation, the State would allow him to plead guilty to manslaughter and use of a firearm to commit a felony. The agreement stated: "No promises, agreements, or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by all parties."

The bill of exceptions from the plea hearing was also received into evidence. It indicated that Wagner was arraigned on the amended information and was informed of the possible penalties for manslaughter and use of a firearm to commit a felony. He was told that the maximum sentence he faced was a term of imprisonment of not more than 70 years, a fine of not more than $25,000, or any combination of the two, and that the minimum sentence was 2 years in prison. The trial court also told Wagner there was no maximum minimum sentence on the charges, so he could be sentenced to 20 to 20 years in prison for the manslaughter charge and 50 to 50 years in prison for the firearm charge. Wagner indicated that he did not need additional time to talk to counsel about the possible sentences.

The bill of exceptions established that the trial court asked Wagner if anyone had made any threat or used any force or held out any inducement or promise, other than a plea agreement, to get him to waive the rights explained to him and that Wagner responded, "No." Wagner said he voluntarily and freely waived the rights as explained, and his counsel stated he believed that Wagner understood the rights and the consequences of waiving them and that the waiver was freely, voluntarily, knowingly, and intelligently made. The court found beyond a reasonable doubt that Wagner waived his rights freely, voluntarily, knowingly, and intelligently, and it accepted his waiver.

Wagner also stated that he was satisfied with the job done by his trial counsel, that he believed counsel was competent, that he had sufficient time to talk to counsel, and that he did not need additional time to talk to counsel. Wagner stated that counsel had read and explained the plea agreement to him, that he understood it, and that there had been no other promises made to him in exchange for the pleas. At sentencing, Wagner stated that he had

had an opportunity to talk with counsel about the presentence investigation report and was not aware of any changes, corrections, or additions needed. He indicated that he was ready to be sentenced.

After the postconviction hearing, the district court found that Wagner did not reasonably demonstrate that he was interested in filing a direct appeal. During a discussion with trial counsel, Wagner informed counsel that he was "okay" with the sentences imposed. As a result of Wagner's telling trial counsel he was "okay" with the sentences, counsel did not discuss with Wagner his right to a direct appeal. His trial counsel did not believe the sentences were excessive. The district court found that following sentencing, Wagner did not request that his counsel file a direct appeal.

The district court found that Wagner knew he had the right to a direct appeal, that he informed his trial counsel he was satisfied with the sentences imposed, and that he did not request that a direct appeal be filed. The court concluded that it was only after Wagner was sentenced and incarcerated and had conferred with a legal aide that he began to think about the length of the sentences imposed and the issues he raised on postconviction. The court concluded that Wagner's request for postconviction relief should be denied in its entirety.

## ASSIGNMENTS OF ERROR

Wagner assigns as error (1) the district court's finding that Wagner knew he had a right to a direct appeal and (2) the district court's finding that counsel did not have a constitutionally imposed duty to consult with Wagner about his right to a direct appeal and its finding that counsel's performance did not fall below an objective standard of reasonableness.

## ANALYSIS

It is Wagner's burden to establish a basis for postconviction relief. A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005).

The district court found that Wagner's trial counsel was an experienced criminal defense attorney and that Wagner discussed

the contents of the plea agreement with counsel prior to its execution. The court determined that following sentencing, Wagner did not request that his trial counsel file a direct appeal. There was a discussion between Wagner and his trial counsel about the sentences imposed, and Wagner informed counsel that he was "okay" with the sentences. As a result, counsel did not discuss with Wagner his right to a direct appeal. The court found that although Wagner testified he thought he had forfeited his right to a direct appeal, he knew he had such a right. On appeal from a proceeding for postconviction relief, the lower court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003). Wagner has not demonstrated that the district court's findings of fact were clearly erroneous.

■ Pursuant to *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant claiming ineffective assistance of counsel must show that counsel's representation "fell below an objective standard of reasonableness" and that counsel's deficient performance prejudiced the defendant. In the context of failure to file a direct appeal, the U.S. Supreme Court has held that the test to determine whether counsel provided ineffective assistance announced in *Strickland* applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. See *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

In *Flores-Ortega*, the question concerned whether counsel was deficient for not filing a notice of appeal when the defendant had not clearly conveyed his wishes concerning an appeal. The Court rejected the bright-line rule adopted by lower courts that counsel must file a notice of appeal unless the defendant specifically instructs otherwise and that failing to file an appeal is per se deficient. *Id.* Where a defendant has not specifically given instructions concerning an appeal, the first question to be asked is whether counsel consulted with the defendant about an appeal. *Id.* If counsel has consulted, that is, advised the defendant about the advantages and disadvantages of taking an appeal, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." 528 U.S. at 478.

■ Although the Court agreed that the better practice is for counsel to routinely consult with the defendant regarding an appeal, it rejected a bright-line rule requiring counsel to always consult with the defendant concerning an appeal. *Id.* Instead, the Court held that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

528 U.S. at 480.

■ The Court stated that to make this determination, postconviction courts "must take into account all the information counsel knew or should have known." *Id.* The Court continued: "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.*

■ The Court concluded that to show prejudice related to the failure to file an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). Whether a defendant meets his burden depends on the facts of a particular case. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." 528 U.S. at 485.

> To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

528 U.S. at 486.

In the case at bar, the convictions followed the entry of a plea agreement. In such a case, the court reviewing for ineffective assistance of counsel should take into consideration whether the

defendant received the sentence he bargained for as part of the plea agreement and whether any appeal rights were reserved by the agreement. Wagner was informed by the trial court as to the possible sentences he could receive for the charges to which he pleaded no contest, and the sentences imposed were within that range. The plea agreement, which was received into evidence at the evidentiary hearing, made no reference to Wagner's appeal rights or to a waiver of those rights.

The testimony offered at the evidentiary hearing supported a finding that trial counsel's performance was not deficient. See *Roe v. Flores-Ortega, supra.* The evidence here does not suggest that Wagner gave express instructions to counsel regarding an appeal.

Wagner entered pleas of no contest, and on appeal, he could have claimed the sentences were excessive. Wagner was sentenced to a term of 10 to 20 years in prison for manslaughter and a term of 7 to 12 years in prison for use of a firearm to commit a felony. Manslaughter is a Class III felony, Neb. Rev. Stat. § 28-305 (Reissue 1995), and Wagner faced a minimum sentence of 1 year in prison and a maximum sentence of 20 years in prison, a $25,000 fine, or both, see Neb. Rev. Stat. § 28-105 (Reissue 1995). Under Neb. Rev. Stat. § 28-1205 (Reissue 1995), use of a firearm to commit a felony is a Class II felony, and the sentence for such a crime is consecutive to any other sentence imposed. Wagner faced imprisonment for a term of 1 to 50 years for this conviction. See § 28-105.

Wagner's sentences were within the statutory ranges. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003). Wagner had no nonfrivolous basis for an appeal, and thus, he has not shown that he was prejudiced by the fact that no appeal was filed. He also has not shown there was a reasonable probability that he would have timely appealed but for the fact that counsel did not specifically consult with him about an appeal.

We have held that "in order to obtain a new direct appeal as postconviction relief, the defendant must show, by a preponderance of the evidence, that the defendant was denied his or her

right to appeal due to the negligence or incompetence of counsel, and through no fault of his or her own." *State v. Curtright*, 262 Neb. 975, 983, 637 N.W.2d 599, 605 (2002). Wagner has not demonstrated that he was denied his right to appeal due to the negligence or incompetence of counsel. The district court did not err in finding that Wagner was not entitled to postconviction relief.

## CONCLUSION
The judgment of the district court is affirmed.

AFFIRMED.