IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
**(Memorandum Web Opinion)**

STATE V. WILEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOHN A. WILEY, APPELLANT.

Filed August 23, 2022.    No. A-21-576.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

John A. Wiley appeals from the order of the Douglas County District Court denying his motion for postconviction relief following an evidentiary hearing. Wiley claims that he received ineffective assistance of trial counsel when counsel failed to file a direct appeal after his no contest plea to one count of possession of a deadly weapon by a prohibited person. We affirm.

## BACKGROUND

At a hearing held on October 3, 2018, Wiley, represented by counsel, entered a plea of no contest to one count of possession of a deadly weapon (firearm) by a prohibited person pursuant to a plea agreement. Prior to the entry of his plea, the district court advised Wiley in pertinent part that "[i]f [he] were to have a trial and . . . were found guilty, [he] would have the right to appeal [his] conviction to the Nebraska Court of Appeals or the Nebraska Supreme Court." Wiley also

- 1 -

affirmed that he understood the "maximum penalty for this charge" to be 50 years' imprisonment with a mandatory minimum sentence of 3 years' imprisonment, and he denied having received "any promise, threats, inducements or promises of leniency made by anyone . . . to get [him] to plead no contest." The court thereafter accepted Wiley's plea of no contest to one count of possession of a deadly weapon by a prohibited person and found him guilty of the same. On January 16, 2019, the court sentenced Wiley to 10 to 15 years' imprisonment and credited him 322 days for time served.

On July 11, 2019, Wiley, pro se, filed a "Verified Motion to Vacate and Set Aside Conviction and Sentence (Postconviction Relief)" alleging that he received ineffective assistance of trial counsel. He described that prior to and during the sentencing hearing, he "expressed discontentment regarding the weapon possession charge" to which he pled no contest, and he was advised by trial counsel to accept the plea deal to avoid "harsher penalties" that the State could pursue. Wiley claimed that trial counsel "failed to submit, file, or otherwise perfect [his] Direct Appeal" following the sentencing hearing on January 16. Wiley asserted that his sentence was "beyond expectation," and he instructed trial counsel to file an appeal immediately after he was sentenced. Wiley claimed that he made "numerous efforts . . . to contact . . . counsel to learn of the progress . . . in preparing his direct appeal[] to no avail" through phone calls and mailed letters. A second motion advancing the same allegations was filed on September 3. Wiley was subsequently appointed counsel.

The matter was set for an evidentiary hearing, and depositions of Wiley and trial counsel were submitted to the district court in lieu of live testimony. We will discuss these depositions in further detail as relevant to this case in the analysis below. In an order entered on June 10, 2021, the court concluded that "trial counsel adequately consulted with [Wiley] about an appeal in light of a plea and [Wiley] did not expressly instruct trial counsel to file one within the statutorily required time frame." The court further concluded:

> Even if the Court found that trial counsel failed to consult with [Wiley] about an appeal and had to make a further inquiry[,] . . . [Wiley] failed to meet his burden in establishing that a rational defendant would want to appeal, that he reasonably demonstrated he was interested in appealing within the required time frame, or that he was prejudiced.

The court thereafter denied Wiley's motion for postconviction relief.

Wiley appeals.

## ASSIGNMENT OF ERROR

Wiley claims that the district court erred in denying his motion for postconviction relief. He asserts that he was denied effective assistance of trial counsel due to counsel's failure to file a direct appeal following his plea-based conviction.

## STANDARD OF REVIEW

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the

defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Russell, supra*.

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *Id.*

ANALYSIS

LEGAL PRINCIPLES

Wiley seeks postconviction relief in the form of a new direct appeal based on allegations of ineffective assistance of trial counsel. Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *Id.* In order to obtain a new appeal as postconviction relief, the defendant must show, by a preponderance of the evidence, that the defendant was denied his or her right to appeal due to the negligence or incompetence of counsel, and through no fault of his or her own. *Id.*

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Russell, supra*. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice in the context of trial counsel's failure to file a direct appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *State v. Wagner*, 271 Neb. 253, 260, 710 N.W.2d 627, 633 (2006) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). The two prongs of the test for ineffective assistance of counsel may be addressed in either order, and the entire ineffective analysis should be viewed with the strong presumption that counsel's actions were reasonable. *State v. Russell, supra*.

In the context of counsel's failure to file a direct appeal, the U.S. Supreme Court has stated that a lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a matter that is professionally unreasonable. See *Roe v. Flores-Ortega, supra*. In such circumstances where counsel deficiently fails to file or perfect an appeal, prejudice will be presumed and counsel will be deemed ineffective, thus entitling the defendant to postconviction relief. See *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020).

However, the U.S. Supreme Court and the Nebraska Supreme Court have rejected a bright-line rule that would require trial counsel to always consult with the defendant regarding a prospective appeal and presume prejudice in circumstances where a defendant has not expressly indicated a desire to appeal. See, *Roe v. Flores-Ortega, supra*; *State v. Wagner, supra*. Rather, the Court has held that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. at 480, 120 S. Ct. at 1036. Thus, in the absence of an instruction or a request for an appeal to be filed, an appellate court utilizes a "reasonableness inquiry for the deficiency prong that considers whether counsel consulted with the defendant and, if not, whether that failure to consult was deficient performance." *State v. Russell*, 308 Neb. at 507, 954 N.W.2d at 928. On the prejudice prong, "'[e]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal'" is often highly relevant in determining whether a defendant was prejudiced by trial counsel's failure to file a direct appeal. *State v. Wagner*, 271 Neb. at 260, 710 N.W.2d at 633 (quoting *Roe v. Flores-Ortega, supra*).

With these principles in mind, we proceed now to set forth the deposition testimonies of Wiley and trial counsel received by the district court.

DEPOSITIONS OF WILEY AND TRIAL COUNSEL

Wiley testified that he was initially charged with possession of a deadly weapon by a prohibited person and "possession with intent to deliver meth and . . . crack." He stated that trial counsel met with him "three times" during the course of proceedings in the district court, and he believed that trial counsel seemed like "[h]e wasn't ready to put up a fight." Following the court's oral pronouncement of his sentence, Wiley described that he was shocked by the length of the sentence, and he said "right there in front of [the trial judge] and everybody" that "we got to appeal this, man." He recalled that his family similarly instructed trial counsel to appeal from the sentence. After the hearing, Wiley believed that trial counsel was "handling" the appeal, and he called trial counsel's office and left messages asking "for [his] police reports" and whether trial counsel filed an appeal. Wiley testified that he never received a letter from trial counsel "explaining what [he] needed to do if [he] wanted to appeal [his] case," and he made attempts to contact trial counsel concerning his appeal without success. Wiley also stated that he did not know that he only had 30 days to file an appeal, and he felt that trial counsel was "ineffective in negotiating [his] plea," "explaining [his] plea," and preparing for trial.

In his deposition, trial counsel similarly indicated that he met with Wiley "three to five times" during the course of proceedings and that Wiley "called a fair amount" while he was in custody. Counsel testified that, following the district court's oral pronouncement of Wiley's sentence, Wiley did not "direct [him] in the courtroom orally to appeal his case [and] sentence," and he did not recall Wiley's reaction to the sentence imposed. While he did not send a letter to Wiley advising him of his right to appeal and the filing requirements, trial counsel's "general practice" in plea hearings was to "almost go word for word what [his clients] can expect from the judge" during the plea colloquy. He described that when his clients indicate that they want to appeal the imposed sentence, he advises them that they "can appeal," but he doesn't "give many false hopes they can appeal and get [a] better" sentence. He believed there were no issues of merit to appeal from because "[t]his was a plea-based conviction, and [Wiley] was sentenced within the parameters of the statutory limits." However, if his clients indicated their desire to retain him for an appeal "after [he has] made full disclosure" of the likelihood of success on appeal, counsel maintained a policy that he would file the appeal regardless "with the knowledge [that it was] probably not going to be successful." Counsel denied having received any directions from Wiley or his family, oral or written, to appeal the case after the sentencing hearing, and had he received any such direction, he indicated that he would have adhered to that instruction.

Wiley argues on appeal that the record supports his claim that he instructed trial counsel to perfect an appeal from his plea-based conviction. He asserts that the district court erred in finding trial counsel's testimony to be more credible than his. Wiley further argues that he was prejudiced by counsel's failure to file an appeal because he was foreclosed from arguing several claims of ineffective assistance of counsel either on direct appeal or in a postconviction action.

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). The role of trier of fact necessarily requires the trial judge to evaluate witness credibility and the weight to be given to witnesses' testimonies. See *id.* Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. *Id.* Evidence not directly contradicted is not necessarily binding on the trier of fact. See *id.*

Upon our review of the record, we cannot say that the district court was clearly wrong in its factual findings, nor in determining that trial counsel was not deficient. Counsel described that his standard practice in plea-based convictions was to advise his clients of the plea colloquy and the limited avenues to appeal from a no contest plea. He also testified that he never received any instruction from Wiley to appeal his case following the sentencing hearing. The district court found trial counsel's testimony to be credible and determined that "[t]he evidence supports a finding that trial counsel adequately consulted with [Wiley] about an appeal in light of a plea and [Wiley] did not expressly instruct trial counsel to file one within the statutorily required time." In addition, while Wiley characterizes trial counsel's testimony as "self-serving," brief for appellant at 24, we note his own self-interest in his claims and the lack of evidence corresponding to his claims that would undermine the district court's credibility evaluation. See *State v. Russell, supra* (defendant who relies upon his or her testimony with little or no supporting documentary evidence does so at risk of nonpersuasion). We are therefore not inclined to second guess the trial court's factual findings solely on the basis of the "specificity" of Wiley's testimony versus the alleged "generalities and lapses of memory" in trial counsel's testimony. Brief for appellant at 23.

Given this backdrop of evidence, the district court did not clearly err in finding that trial counsel adequately consulted with Wiley regarding an appeal and that Wiley did not instruct counsel to file an appeal. In the absence of such an instruction, trial counsel could not have been ineffective in not filing an appeal. Due to our conclusion that trial counsel did not act deficiently, we need not consider whether Wiley was prejudiced by counsel's failure to file an appeal in this matter. See *State v. Russell, supra* (finding that defendant was adequately apprised of his right to appeal and that he did not instruct trial counsel to file direct appeal did not require further inquiry on appeal from postconviction action into whether defendant was prejudiced by counsel's failure to file direct appeal).

## CONCLUSION

For the reasons set forth above, we affirm the district court's order denying Wiley's motion for postconviction relief.

AFFIRMED.