STATE OF NEBRASKA, APPELLEE, V.
JERROLD A. MCLEOD, APPELLANT.
741 N.W.2d 664

Filed November 30, 2007. No. S-07-013.

Jerrold A. McLeod, pro se.

Jon Bruning, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Jerrold A. McLeod is serving a life sentence on a plea-based conviction of first degree murder. He appeals from an order of the district court for Lancaster County denying his motion for postconviction relief without an evidentiary hearing. We find no error and affirm.

## I. BACKGROUND

On April 14, 1999, McLeod pled no contest to an amended information charging him with first degree murder. McLeod was 17 years old on the date of sentencing. Prior to accepting the plea, the district court questioned McLeod in order to determine whether his plea was knowingly, voluntarily, and intentionally made. McLeod informed the court that he had recently obtained his diploma through the GED program. He stated he had not taken any alcohol, drugs, or medication in the last 72 hours, nor was he under the care of a psychiatrist. The court determined he was competent.

The court then informed McLeod that his attorney had filed a motion to transfer the cause to juvenile court and that if his plea was accepted, he would be waiving the right to a hearing on that motion. It further informed him that a motion to suppress certain statements he had made was pending and that his plea would mean that the motion would not be heard. McLeod acknowledged that he understood the effect of his plea on those motions. The court then informed McLeod that he was presumed innocent and that he had a right to a jury trial, a right to confrontation, and a right to call witnesses in his defense; all rights that he would be waiving by entering the plea. McLeod

acknowledged that he was aware of the effect of his plea on his constitutional rights.

In addition, the court informed McLeod, "If you are found guilty in this case, you will be found guilty of a felony and that can be used against you later on in life." The court further explained:

> Being convicted for a felony can also lead to the loss of certain of your civil rights, including but not necessarily limited to your right to vote and your right to carry a firearm. . . .
>
> . . . .
>
> . . . If you should continue to get into trouble of a felony nature, the fact of this conviction could be used at some later time to make the penalty for the later conviction more severe.

The court then specifically stated, "If you are found guilty in this case . . . there is only one penalty that I can impose in this matter and that is a sentence of life imprisonment." McLeod stated that he understood the court's explanation.

The court specifically asked whether anyone had threatened, pressured, or coerced McLeod into giving up the rights it had previously explained, and he responded, "No." McLeod affirmed that other than the plea agreement, he was not promised anything in exchange for giving up his rights. He stated that he understood the rights that were explained to him and that he had no questions about them. McLeod then stated that he was satisfied with the performance of his counsel and that he freely and voluntarily waived his rights. His counsel stated that he was satisfied that McLeod understood his rights and that he knowingly, voluntarily, and intentionally waived them. The court then accepted McLeod's plea.

Thereafter, the State described the terms of the plea agreement. In exchange for McLeod's plea to first degree murder, the State agreed not to file additional charges against him related to the crimes that took place on the day of the murder, including robbery and concealing evidence. In addition, the State agreed not to file charges against McLeod related to a separate burglary committed after the murder and a separate theft committed prior to the murder. The State further agreed not to file any charges

against McLeod relating to an attempt to escape from custody after the murder.

After the plea agreement was described, McLeod again affirmed that he had not been promised anything more than the terms of the plea agreement in exchange for his plea and that no one had threatened, pressured, or coerced him to plead. The State then offered a factual basis for the charge, in which it was explained that McLeod, then 16 years old, possessed and fired a shotgun during a burglary attempt which resulted in the death of one person. After the court accepted the factual basis for the plea, it sentenced McLeod to life in prison. In doing so, the court noted, "I understand that as we have gone through the plea that . . . McLeod knows that I have no discretion in sentencing." Similarly, McLeod's counsel noted "[w]e understand the court has no discretion in sentencing . . . ." Counsel further stated that McLeod "knows he has a life sentence now that he is going to have to serve and hopefully demonstrate during his time in the institution that something good can come out of this horrible tragedy." Counsel further stated that McLeod "understands that for him to get anywhere in life and be considered for something less than [a] life sentence, he has to begin something." After imposing the life sentence, the court informed McLeod:

> What that means . . . is that you remain in prison unless and until your sentence is commuted to a term of years. Until then, you are not eligible for parole. Whether it is ever commuted, is not something that is not [sic] up to me. But at some time, unless the rules change between here and then, it is up to the Board of Pardons.

Neither McLeod nor his counsel offered any objection either before or after the sentence was imposed.

McLeod's trial counsel timely filed a direct appeal, based solely upon a claim that his sentence was excessive. This court granted the State's motion for summary affirmance.[1] On September 7, 2006, McLeod filed a verified motion for postconviction relief, asserting that both his trial and appellate counsel had been ineffective. McLeod also filed motions to proceed in

---

[1] *State v. McLeod*, 258 Neb. xxi (No. S-99-717, Nov. 10, 1999).

forma pauperis and for appointment of counsel. After ordering the State to respond to the postconviction motion, the district court denied McLeod postconviction relief without an evidentiary hearing or appointment of counsel. McLeod filed this timely appeal, which we moved to our docket based on our statutory authority to regulate the caseloads of the appellate courts of this state.[2]

## II. ASSIGNMENTS OF ERROR

McLeod assigns, restated, consolidated, and renumbered, that the district court erred in (1) ordering the State to respond to his postconviction motion and allowing the State to present evidence on the issue of whether he was entitled to an evidentiary hearing, (2) denying him postconviction relief without an evidentiary hearing, and (3) failing to appoint him counsel.

## III. STANDARD OF REVIEW

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. When such an allegation is made, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief.[3] A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[4]

## IV. ANALYSIS

### 1. POSTCONVICTION PROCEDURE

McLeod's first assignment of error challenges the procedure utilized by the district court in determining, without an evidentiary hearing, that he was not entitled to postconviction

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

[3] *State v. Hudson*, 270 Neb. 752, 708 N.W.2d 602 (2005); *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005).

[4] *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004); *State v. Dean*, 264 Neb. 42, 645 N.W.2d 528 (2002).

relief. Under the Nebraska Postconviction Act,[5] the district court has discretion to adopt reasonable procedures for determining what the motion and the files and records show, and whether any substantial issues are raised, before granting a full evidentiary hearing.[6] We examine such procedures for abuse of discretion, which exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[7]

On the day after McLeod filed his verified motion for postconviction relief requesting an evidentiary hearing and a motion for appointment of counsel, the district court entered an order in which it ordered the State to file a written response to the postconviction motion and deferred ruling on the motion for appointment of counsel until it had made a determination as to whether an evidentiary hearing was required. The State filed a response in which it moved to deny an evidentiary hearing on the ground that the files and records showed that McLeod was not entitled to the relief sought in his motion. McLeod filed an objection to the procedure utilized by the court in requiring the State to respond to his motion, and he moved to recuse the district judge.

The district court conducted a hearing on McLeod's procedural objection and motion to recuse and the State's motion to deny an evidentiary hearing on the postconviction claim. McLeod participated in the hearing by telephone. The court overruled McLeod's objection and motion and then received two exhibits offered by the State: the bill of exceptions and judge's minutes from McLeod's 1999 plea and sentencing proceedings. At the close of the hearing, the court took the matter under submission and later entered a written order denying postconviction relief.

---

[5] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995).

[6] *State v. Dean, supra* note 4.

[7] *Id.*; *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001).

The procedure followed by the district court in this case is similar to that which we upheld in *State v. Dean*.[8] There, we noted that it was not unusual for a court to conduct a hearing to determine which files and records it may examine before determining whether to grant an evidentiary hearing on a motion for postconviction relief and that the procedure did not deprive the prisoner of a substantial right. We conclude, as we did in *Dean*, that the district court did not abuse its discretion with respect to procedures it utilized for reviewing files and records of McLeod's conviction and sentence.

## 2. DENIAL OF POSTCONVICTION RELIEF

In his motion for postconviction relief, McLeod alleged that he was denied rights secured by the 6th and 14th amendments to the U.S. Constitution and Neb. Const. art. I, § 11, because his counsel was ineffective in advising him regarding his plea and in representing him on appeal from his conviction and sentence. We note that McLeod was represented by the same lawyer at the time of his plea and on direct appeal, and accordingly, this postconviction proceeding was his first opportunity to assert claims of ineffective assistance of counsel.[9]

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[10] Normally, a voluntary guilty plea waives all defenses to a criminal charge. However, in a postconviction action brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance

---

[8] *State v. Dean, supra* note 4.

[9] See *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002).

[10] *State v. Barnes*, 272 Neb. 749, 724 N.W.2d 807 (2006).

of counsel.[11] When a conviction is based upon a guilty plea or a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.[12]

Given that relief was denied without an evidentiary hearing, we must determine whether McLeod alleged facts which support his claim that he was denied effective assistance of counsel; and if so, whether the files and records affirmatively show that he is entitled to no relief.[13]

### (a) Inducement of Plea

McLeod alleged in his postconviction motion that his counsel was ineffective "for having induce [sic] [McLeod] to accept the plea agreement by assuring him that 'more than likely you'll be released before age forty', all the while knowing that [McLeod] would be given a life sentence if he plead [sic] to the charge of Murder in the First Degree." McLeod further alleged that his attorney advised him that if he were to take responsibility for his actions and show remorse, "'Someday, they'll see your case and take into account your age, nature of the crime and circumstances that lead [sic] to this grave tragedy.'" McLeod alleged that this led him to believe that he would in fact be sentenced to a term of years and that had he understood the reality of his situation, he would have refused to plead and insisted upon a trial.

As reflected in the record of the plea hearing, McLeod specifically denied that any promises had been made to induce his plea and that he was not subjected to any threats, pressure, or coercion. He also expressed his understanding that life imprisonment was the only sentence which could be imposed by the court. The statements which McLeod now attributes to his lawyer do not constitute a basis for postconviction relief. At most,

[11] See, *State v. Barnes, supra* note 10; *State v. Deckard,* 272 Neb. 410, 722 N.W.2d 55 (2006).

[12] See *State v. Thomas,* 262 Neb. 138, 629 N.W.2d 503 (2001).

[13] See, *State v. McHenry, supra* note 4; *State v. Dean, supra* note 4.

he has alleged that his lawyer advised him there was a chance of future clemency in the form of commutation, which was consistent with the court's statement at sentencing that McLeod would remain in prison for the rest of his natural life unless and until his sentence was commuted to a term of years by the Board of Pardons and that he would not be eligible for parole prior to any such commutation.

## (b) Pending Motions

McLeod alleges that his counsel could not have made an adequate assessment of the proposed plea agreement without knowing the ultimate disposition of his pending motions to suppress a statement and to transfer his case to juvenile court. But he alleges no facts upon which to assess the merits of the motions, nor does he allege that the State's offer of a plea agreement would have remained open if counsel had insisted upon disposition of the motions before responding. The record clearly reflects McLeod's understanding that his right to obtain a disposition of the pending motions would be waived if the court accepted his plea and that he affirmatively chose to accept the plea agreement with that knowledge.

## (c) Factual Basis for Plea

McLeod alleged that his counsel was ineffective in advising him to enter a plea to a charge for which there was no factual basis and in "failing to file a motion in arrest of judgment challenging the plea" as lacking a factual basis. At the sentencing hearing, the parties stipulated to the submission of a six-page narrative of the crime, which describes McLeod's involvement in the crime, as the factual basis for his plea. In response to questions from the court, McLeod indicated that he had read the document, that he did not wish to comment on its content, and that he still wished to enter a plea of no contest. The document disclosed that McLeod and two other individuals attempted to invade a residence in order to steal drugs. McLeod was armed with a .410 shotgun, and one of his accomplices was armed with a 12 gauge shotgun. McLeod admitted firing his .410 shotgun at the individual that was killed. A firearms examiner, however, noted that the pellets actually removed from the victim likely

came from the 12 gauge shotgun. Based on this, McLeod asserts that the factual basis showed he was guilty of aiding and abetting at best, but not guilty of first degree murder.

■ McLeod alleged that this document established that he was merely an aider and abettor, and therefore could not have been found guilty of first degree murder. This claim lacks merit because the common-law distinction between principal and aider and abettor has been abolished in Nebraska; a person who aids, abets, procures, or causes another to commit any offense may be prosecuted as if he or she were the principal offender.[14] The record reflects a factual basis for McLeod's plea, and his counsel could not be ineffective for failing to contend otherwise.

(d) Speedy Trial

McLeod alleged that his counsel was ineffective in failing to preserve his constitutional right to a speedy trial guaranteed by the Sixth Amendment to the U.S. Constitution. In support of this claim, he alleged that his plea occurred 11 months after his arrest and that although his counsel filed certain motions "which would have tolled this time for the prosecution," such motions "did little for [McLeod] and much for the prosecution." He alleged no facts to support this conclusion.

■ Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.[15] None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant.[16] McLeod has not alleged facts to establish that he had a colorable claim of

[14] *State v. Contreras*, 268 Neb. 797, 688 N.W.2d 580 (2004); Neb. Rev. Stat. § 28-206 (Reissue 1995).

[15] *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006).

[16] *Id.*

denial of his constitutional right to a speedy trial at the time he entered his plea. Defense counsel is not ineffective for failing to raise an argument that has no merit.[17] Moreover, the record clearly reflects that McLeod knowingly and voluntarily waived his right to trial when he entered his plea.

### (e) Appeal

In his postconviction motion, McLeod alleged that his counsel was ineffective in "filing a frivolous appeal for excessive sentence, knowing that the only sentence that the court could impose for the charge of Murder in the First Degree was a life sentence." He alleged that counsel should have raised "the speedy trial issue" and "lack of [a] factual basis for the charge of Murder in the First Degree" in his appeal.

McLeod alleged no facts concerning his directions to or communications with his attorney regarding an appeal. McLeod's direct appeal was clearly without merit, but whether it was frivolous may depend upon whether McLeod directed his counsel to file it.[18] But even where defense counsel completely fails to file an appeal, the question of whether a defendant is prejudiced thereby often depends upon "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal."[19] Here, there is no allegation that McLeod specifically requested or directed his attorney to appeal his conviction or sentence. For the reasons discussed above, McLeod's claims regarding speedy trial and lack of factual basis would not have constituted "nonfrivolous grounds for appeal." McLeod has not alleged facts to establish ineffective assistance of appellate counsel, and his conclusory allegations are refuted by the record.

---

[17] *State v. McHenry, supra* note 4.

[18] See *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000).

[19] *Roe v. Flores-Ortega*, 528 U.S. 470, 485, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (cited and quoted in *State v. Wagner*, 271 Neb. 253, 710 N.W.2d 627 (2006)).

### (f) Summary

Based upon our examination of the postconviction motion and the files and records of the underlying criminal proceeding, we conclude that the district court did not err in denying postconviction relief without conducting an evidentiary hearing.

### 3. DENIAL OF MOTION TO APPOINT COUNSEL

 McLeod asserts that the district court erred in failing to appoint him counsel so that he could conduct further discovery on his postconviction motion. Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant.[20] When the assigned errors in a postconviction petition before the district court contain no justiciable issues of law or fact, it is not an abuse of discretion to fail to appoint counsel for an indigent defendant.[21] Based upon our conclusion that McLeod's postconviction motion and the files and records of his case do not present any justiciable issue with respect to postconviction relief, we conclude that the district court did not abuse its discretion in denying his motion for appointment of counsel.

### V. CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

AFFIRMED.

---

[20] *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005).

[21] *Id.*