State of Nebraska, appellee, v.
Luis Fernando-Granados, appellant.
___ N.W.2d ___

Filed October 31, 2014.    No. S-13-899.

1.  **Postconviction: Appeal and Error.** Appeals of postconviction proceedings will be reviewed independently if they involve a question of law.
2.  **Postconviction.** A trial court's ruling that the petitioner's allegations are too conclusory is a finding as a matter of law that the petitioner has failed to state a claim for postconviction relief.
3.  **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
4.  **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing the claim, an appellate court reviews the factual findings of the lower court for clear error. However, with regard to the questions of deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
5.  **Postconviction: Constitutional Law: Proof.** The Nebraska Postconviction Act provides relief to a convicted prisoner if that prisoner can show that his or her conviction was the result of an infringement of the prisoner's constitutional rights.
6.  **Postconviction.** Upon presentation of a motion for postconviction relief to the court, the court may set aside the judgment if it is found to be void or voidable.
7.  ____. Postconviction relief may be denied without an evidentiary hearing if (1) the petitioner failed to allege facts supporting a claim of ineffective assistance of counsel or (2) the files and records affirmatively show that he or she is entitled to no relief.
8.  **Effectiveness of Counsel.** In an ineffective assistance of counsel claim, there must be a finding of both deficiency of counsel and prejudice to the defendant's case.
9.  ____. In an ineffective assistance of counsel claim, deficient performance and prejudice may be addressed in either order.
10. **Effectiveness of Counsel: Presumptions.** The entire ineffective assistance of counsel analysis should be viewed with a strong presumption that counsel's actions were reasonable.
11. **Effectiveness of Counsel: Proof.** Prejudice in an ineffective assistance of counsel case is shown when there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that but for counsel's deficient performance, the result of the proceeding would have been different.

Appeal from the District Court for Douglas County: DUANE
C. DOUGHERTY, Judge. Affirmed.

James J. Regan for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for
appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK,
MILLER-LERMAN, and CASSEL, JJ.

MCCORMACK, J.
## NATURE OF CASE
In 2003, following a bench trial, Luis Fernando-Granados
was convicted of first degree murder and use of a deadly
weapon to commit a felony. We affirmed Fernando-Granados'
convictions on direct appeal.[1] In 2012, Fernando-Granados
brought a motion for postconviction relief in the district court
for Douglas County, claiming ineffective assistance of counsel,
prosecutorial misconduct, and a violation of the terms of the
Vienna Convention on Consular Relations. The district court
dismissed Fernando-Granados' motion without an evidentiary
hearing. Fernando-Granados appeals the dismissal of his inef-
fective assistance of counsel claim.

## BACKGROUND
### ORIGINAL TRIAL AND APPEAL
The facts of the original crime are summarized below, but
are set forth in greater detail in *State v. Fernando-Granados*.[2]

On May 26, 2002, the body of the victim was found in the
parking lot of a restaurant in Douglas County. Authorities
arrested two suspects in the subsequent investigation,
including Fernando-Granados. During police questioning,
Fernando-Granados confessed to the murder of the victim
in the course of an armed robbery. The evidence against
Fernando-Granados included the victim's personal effects,

---

[1] See *State v. Fernando-Granados*, 268 Neb. 290, 682 N.W.2d 266 (2004).

[2] *Id.*

such as her checkbook, credit cards, and driver's license, which were found in Fernando-Granados' apartment. DNA and other physical evidence also linked Fernando-Granados' cash and footprints to the scene of the crime. In particular, the victim had been run over by a car during her murder. Tire prints on her clothing and body were linked to the car driven by Fernando-Granados and his accomplice.

Trial counsel for Fernando-Granados was employed through the Douglas County public defender's office. Counsel mounted defenses primarily based on admissibility of evidence. After a bench trial, the trial court found Fernando-Granados guilty of first degree murder and use of a deadly weapon to commit a felony. He was sentenced to life imprisonment, plus an additional 10 to 20 years for the weapon conviction. The terms were to be served consecutively.

On direct appeal, Fernando-Granados retained his counsel from the Douglas County public defender's office. Defense counsel argued that Fernando-Granados was inadequately advised of his *Miranda* rights prior to confession. Further, counsel argued that the trial court erred in receiving certain DNA evidence at trial. We upheld the rulings of the trial court.

## Motion for Postconviction Relief

In 2012, Fernando-Granados filed a motion for postconviction relief. In his motion, he alleged ineffective assistance of counsel on several grounds. Among Fernando-Granados' complaints were failure to request an independent forensic expert, failure to object to certain hearsay testimony, and failure to investigate and interview several other potential witnesses. Further, Fernando-Granados claimed that counsel erred in failing to raise on direct appeal issues of prosecutorial misconduct and an alleged infringement of his rights under the Vienna Convention on Consular Relations. Altogether, Fernando-Granados raised 24 specific instances of ineffective assistance of counsel in his initial motion. Fernando-Granados requested an evidentiary hearing on these claims.

The claims were dismissed without an evidentiary hearing. On appeal, Fernando-Granados argues that the trial court

erred in dismissing, without an evidentiary hearing, four instances of ineffective assistance of counsel, all involving a failure to investigate. Specifically, Fernando-Granados names four individuals and claims that each witness could have testified against Michael Puzynski. Fernando-Granados claims that Puzynski had a motive to commit the murder of which Fernando-Granados was convicted.

Fernando-Granados alleged the nature of the testimony that could have been provided by each potential witness. In his motion for postconviction relief, Fernando-Granados asserted that counsel should have interviewed and investigated Kara Rassmussen. Fernando-Granados asserts that, if called, Rassmussen would have testified against Puzynski, stating that Puzynski had a similar car to the one involved in the crime, that Puzynski was being investigated by the Omaha Police Department for theft of the victim's frequent flier points at the time of her death, and that Puzynski had stated the victim "'was an annoying bitch that should be dead.'"

In his motion, Fernando-Granados alleges error in trial counsel's failure to interview and investigate Erin Gillespie, who would have corroborated the facts known by Rassmussen, and added that Gillespie heard Puzynski state, "'I wish she was dead.'"

Fernando-Granados further states that Deputy G. Scheer could have testified that Rassmussen contacted him at the Douglas County sheriff's office with the above information soon after the crime occurred.

Fernando-Granados also states that Sgt. M.R. Gentile also received the information regarding Puzynski from Gillespie and could testify as to that information.

## ASSIGNMENTS OF ERROR

Fernando-Granados asserts, restated, that the trial court erred in failing to grant him an evidentiary hearing. He argues that the alleged facts in his motion for postconviction relief, if proved, would constitute an infringement of his constitutional rights resulting from ineffective assistance of trial counsel.

## STANDARD OF REVIEW

[1] Appeals of postconviction proceedings will be reviewed independently if they involve a question of law.[3]

[2] A trial court's ruling that the petitioner's allegations are too conclusory is a finding as a matter of law that the petitioner has failed to state a claim for postconviction relief.[4]

[3] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[5]

[4] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[6] When reviewing the claim, an appellate court reviews the factual findings of the lower court for clear error. However, with regard to the questions of deficient performance and prejudice under *Strickland v. Washington*,[7] an appellate court reviews such legal determinations independently of the lower court's decision.[8]

## ANALYSIS

[5-8] The Nebraska Postconviction Act provides relief to a convicted prisoner if that prisoner can show that his or her conviction was the result of an infringement of the prisoner's constitutional rights.[9] Upon presentation of a motion for postconviction relief to the court, the court may set aside the judgment if it is found to be void or voidable.[10] Postconviction relief may be denied without an evidentiary hearing if (1) the petitioner failed to allege facts supporting a claim of

---

[3] See *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013).

[4] See *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[5] *Id*.

[6] *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013).

[7] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[8] *State v. Rocha, supra* note 6.

[9] Neb. Rev. Stat. § 29-3001(1) (Cum. Supp. 2012).

[10] § 29-3001(2).

ineffective assistance of counsel or (2) the files and records affirmatively show that he or she is entitled to no relief.[11] In an ineffective assistance of counsel claim, there must be a finding of both deficiency of counsel and prejudice to the defendant's case.[12] We find that the trial court was correct to deny an evidentiary hearing for the reason that the files and records affirmatively show that no prejudice was caused to Fernando-Granados' case.

[9,10] In order to show ineffective assistance of counsel under *Strickland v. Washington*,[13] a defendant must show, first, that counsel was deficient and, second, that the deficient performance actually caused prejudice to the defendant's case. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.[14]

[11] Prejudice caused by counsel's deficiency is shown when there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[15] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[16] This court follows the approach to the prejudice inquiry outlined by the U.S. Supreme Court in *Strickland*:

> "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect

---

[11] See, *State v. Glover*, 276 Neb. 622, 756 N.W.2d 157 (2008); *State v. McLeod*, 274 Neb. 566, 741 N.W.2d 664 (2007). See, also, *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010).

[12] *Strickland v. Washington, supra* note 7.

[13] *Id.*

[14] See, *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000); *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

[15] See *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[16] *Id.* at 774, 822 N.W.2d at 849.

on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."[17]

In *State v. Poe*,[18] the petitioner, Ryan L. Poe, filed a post-conviction motion claiming trial counsel was ineffective for failing to elicit testimony of Poe's father and failing to pursue avenues of impeachment with other witnesses. Poe submitted affidavits to the district court detailing his father's proposed testimony proving Poe's alibi. Poe alleged his father also would have testified that Poe did not have financial need to commit the robbery of which Poe was convicted, thus allegedly negating Poe's motive.[19] Finally, Poe alleged that, if cross-examined, an adverse witness would have said that "'the police were trying to get him to say something that was not true.'"[20] The district court denied Poe an evidentiary hearing.

We held that an allegation of trial counsel's failure to call a witness who might negate an alleged motive was insufficient to warrant an evidentiary hearing.[21] In so holding, we reasoned that the proposed testimony in the affidavit did not involve facts tending to negate Poe's fault or culpability and, thus, was not prejudicial.[22]

---

[17] *Id*. at 774-75, 822 N.W.2d at 849 (quoting *Strickland v. Washington, supra* note 7).

[18] *State v. Poe, supra* note 15.

[19] *Id*.

[20] *Id*. at 773, 822 N.W.2d at 848.

[21] *State v. Poe, supra* note 15.

[22] See *id*.

However, where the witness could have testified to Poe's alibi, the allegation was sufficient to warrant an evidentiary hearing. Similarly, where defense counsel failed to properly cross-examine a witness as to a prior inconsistent statement, the allegation was sufficient to warrant an evidentiary hearing.[23] We could not say, as a matter of law, that had defense counsel pursued the specified avenue of interrogation at trial, the result would not have been different.[24] Though defense counsel could have had reason for not pursuing this avenue of impeachment, an evidentiary hearing was necessary to determine more facts and whether or not trial counsel's strategy was reasonable.

Here, all of Fernando-Granados' arguments concern alleged evidence of another suspect who had a motive to murder the victim. Fernando-Granados alleges that witnesses would have testified Puzynski "wish[ed] [the victim] was dead" and that Puzynski was being investigated for a theft of the victim's frequent flier miles.

There was overwhelming evidence against Fernando-Granados in his original trial. Fernando-Granados confessed to the crimes of robbery and murder. Evidence connected the victim's DNA to Fernando-Granados' home and to his personal belongings. Circumstantial evidence showed that Fernando-Granados was with his accomplice the night he was involved in the robbery. Fernando-Granados' live-in girlfriend testified against him in connection with the robbery and murder. Fruits of the crime, such as cash and the victim's personal belongings, were all found with Fernando-Granados. The proposed testimony supposedly would have shown that Puzynski had, on one instance, threatened to kill the victim and that Puzynski had motive to kill the victim. However, given the substantial corroborating evidence indicating Fernando-Granados' guilt, evidence that another person may have wanted to kill the victim would not have been enough to change the direction of the case.

---

[23] *Id.*

[24] *Id.*

None of the proposed allegations called into question Fernando-Granados' fault or culpability. Therefore, we find that, given the great weight of the evidence against Fernando-Granados, there was no ineffective assistance of counsel because there was no prejudice to Fernando-Granados' case.

### CONCLUSION

The trial court did not err in denying Fernando-Granados an evidentiary hearing because, given the great weight of the evidence against him, even finding the allegations true would not have been prejudicial to Fernando-Granados' case.

AFFIRMED.

———————

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. LENNY W. THEBARGE, JR., RESPONDENT.

___ N.W.2d ___

Filed October 31, 2014.    Nos. S-13-1001, S-14-128.

1. **Disciplinary Proceedings.** A proceeding to discipline an attorney is a trial de novo on the record.
2. ____. Failure to answer formal charges subjects a respondent to judgment on the formal charges filed.
3. ____. Six factors are considered in determining whether and to what extent discipline should be imposed: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
4. ____. Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.
5. ____. Absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.
6. ____. Neglect of client cases and failure to cooperate with the Counsel for Discipline are grounds for disbarment.
7. ____. Fabricating evidence with the intent to deceive the Counsel for Discipline interferes in a disciplinary investigation, which merits a severe sanction.
8. ____. In an attorney discipline proceeding, failure to regard the rules of professional conduct and failure to abide by one's oath as an attorney are considered aggravating factors.

Original actions. Judgment of disbarment.