IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HERNANDEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BENJAMIN HERNANDEZ, JR., APPELLANT.

Filed December 15, 2020.    No. A-19-1025.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Yvonne D. Sosa for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Benjamin Hernandez, Jr., appeals from his plea-based convictions and sentences in the district court for Douglas County for one count of possession of a deadly weapon by a prohibited person and one count of possession of methamphetamine with intent to distribute. He claims that his sentences are excessive and that his trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm.

## II. BACKGROUND

On December 4, 2018, the State charged Hernandez with one count of possession of a deadly weapon by a prohibited person, a Class ID felony; one count of possession of cocaine with intent to distribute, a Class II felony; and one count of possession of methamphetamine with intent to distribute, 140 grams or more, a Class IB felony.

- 1 -

Hernandez filed a motion to suppress, seeking to suppress the physical evidence found during a search of his residence and any statements he made to police while in custody. Following a hearing, the district court denied Hernandez' motion to suppress.

Hernandez subsequently filed pro se motions to discover and to appoint new counsel. Hernandez' counsel filed a motion to withdraw. At a hearing on August 8, 2019, the district court found that the State had provided all discovery materials to Hernandez' counsel and denied Hernandez' attorney's motion to withdraw.

On August 12, 2019, pursuant to a plea agreement, the State dismissed the count of possession of cocaine with intent to distribute. Hernandez then agreed to plead no contest to the remaining two counts: possession of a deadly weapon by a prohibited person and possession of methamphetamine with intent to distribute, 140 grams or more.

Prior to accepting Hernandez' no contest pleas, the district court advised him that he was giving up certain constitutional rights by entering a plea, which included the right to confront witnesses against him, the right to a jury trial, and the privilege against self-incrimination. The court further advised Hernandez that he had the right to be represented by an attorney at all stages of a criminal proceeding. Hernandez stated that he understood the rights he was waiving as well as the charges against him and the range of possible penalties. Hernandez indicated to the court that he had sufficient time to discuss the case with his attorney prior to the hearing and that they had spoken about all possible defenses. Hernandez stated that he understood that by entering a plea of no contest, he was waiving his right to appeal the district court's ruling on his motion to suppress. The State then provided a factual basis to support Hernandez' no contest pleas and provided a certified copy of a felony conviction out of Iowa.

In summary, the State's evidence at trial would have showed that officers with the Omaha Police Department responded to a dispatch call indicating that shots had been fired near a residence. Upon arrival, officers found shell casings in the alley and yard adjacent to the house. Hernandez was standing on the back porch of the residence and was eventually taken into custody and brought to the police station. After obtaining a search warrant, officers searched Hernandez' residence and found cocaine, approximately 223.35 grams of methamphetamine, and firearms.

The district court found beyond a reasonable doubt that Hernandez understood the nature of the charges against him to which he pled no contest; that he understood the possible penalties; that the pleas were made freely, knowingly, intelligently, and voluntarily; and that there was a sufficient factual basis to support the pleas. The court accepted Hernandez' pleas and found him guilty on both counts. The court ordered a presentence investigation and scheduled sentencing.

On October 8, 2019, a sentencing hearing was held. The district court sentenced Hernandez to a term of 10 to 15 years' imprisonment on the count of possession of a deadly weapon by a prohibited person and a term of 20 to 25 years' imprisonment on the count of possession of methamphetamine with the intent to distribute. The two sentences were to run consecutively. Hernandez was given 354 days of credit for time served. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Hernandez assigns that his trial counsel was ineffective in five different ways and that the district court abused its discretion in imposing excessive sentences.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving the litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Hernandez argues that his trial counsel provided ineffective assistance. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Hernandez has different counsel on direct appeal than he did at trial. When a defendant's counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha, supra.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal depends upon the sufficiency of the record to address the claim to determine whether a defense counsel's performance was deficient and whether the defendant was prejudiced by the

alleged deficient performance. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Consolidated, Hernandez asserts that he received ineffective assistance of trial counsel when his attorney (a) failed to request a bench trial to preserve his right to challenge the district court's ruling on his motion to suppress, (b) failed to allow Hernandez to review discovery materials, and (c) failed to investigate a potential exculpatory witness.

## (a) Failure to Preserve Motion to Suppress

Hernandez' first three assignments of ineffective assistance of counsel all pertain to his motion to suppress, and we thus address them together. Hernandez argues that his trial counsel was ineffective for failing to request that a stipulated bench trial be held so that his right to challenge the district court's denial of his motion to suppress on appeal was preserved. He argues that the testimony and exhibits presented at the hearing on his motion to suppress show that his constitutional rights were violated. He challenges the admissibility of both his statements to law enforcement and the physical evidence seized from his home. However, the record conclusively demonstrates that Hernandez cannot prove prejudice resulting from this alleged failure of his trial counsel. And, where the record refutes a claim of ineffective assistance of counsel, no recovery may be had. See *State v. Liner*, 24 Neb. App. 311, 886 N.W.2d 311 (2016).

The record shows that Hernandez agreed to plead in this case at least in part to secure the benefits of a favorable plea agreement, in which the State dismissed the count of possession of cocaine with intent to distribute, a Class II felony with a possible penalty of 1 to 50 years' imprisonment. Additionally, if Hernandez had gone to trial, the State would have filed an amended information alleging additional counts of possession of a firearm by a prohibited person, each a Class ID felony with a mandatory minimum sentence of 3 years' imprisonment and a possible maximum of 50 years' imprisonment on each additional count. Hernandez does not assert that the benefits of this plea agreement would have still been available to him if he had chosen to hold a stipulated bench trial.

Furthermore, the record reflects that Hernandez understood that by pleading no contest, he was waiving the right to further challenge the admissibility of any evidence seized by law enforcement, including statements he may have made. Indeed, the district court specifically asked, "Do you understand that by entering these pleas, you won't be able to appeal to a higher Court the ruling I made on [your motion to suppress]. Do you understand that, sir?" to which Hernandez answered, "Yes, sir." As the Nebraska Supreme Court has noted, a defendant cannot secure relief by recanting assurances made to the trial court during the sanctity of a full and formal court proceeding "'after the doors of the prison clang shut.'" *State v. Vanderpool*, 286 Neb. 111, 118, 835 N.W.2d 52, 58 (2013) (quoting *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

The defendant in *State v. McLeod*, 274 Neb. 566, 741 N.W.2d 664 (2007), made a similar argument to that raised by Hernandez in this appeal. In *McLeod*, the defendant alleged that his trial counsel could not have made a proper assessment of the State's proposed plea agreement without knowing the ultimate disposition of pending motions to suppress and to transfer the case to juvenile

court. This issue was raised by McLeod in a postconviction motion, but the district court denied an evidentiary hearing. On appeal, the Supreme Court rejected McLeod's assignment that the district court had erred in not granting an evidentiary hearing, noting that McLeod

> alleges no facts upon which to assess the merits of the motions, nor does he allege that the State's offer of a plea agreement would have remained open if counsel had insisted upon disposition of the motions before responding. The record clearly reflects McLeod's understanding that his right to obtain a disposition of the pending motions would be waived if the court accepted his plea and that he affirmatively chose to accept the plea agreement with that knowledge.

*Id.* at 575, 741 N.W.2d at 672-73.

The record shows that Hernandez was specifically informed that by entering pleas of no contest, he was giving up his right to challenge the district court's ruling on his motion to suppress and that Hernandez affirmed he understood this consequence of entering a plea. We therefore determine that, as a matter of law, Hernandez cannot show that he was prejudiced by his counsel's failure to request a stipulated bench trial. This argument fails.

### (b) Failure to Allow Hernandez to Review Discovery

Hernandez argues that his trial counsel was ineffective for failing to permit Hernandez to review discovery materials in this case. He claims that had he "been allowed access to the discovery in his case, he would have been able to assist in his defense by pointing out the constitutional rights violations he wanted litigated." Brief for appellant at 19. However, we determine that Hernandez' claims are refuted by the record.

At the plea hearing, Hernandez indicated that he had "had enough time to talk to [his] lawyer about [the plea] before coming to court." Hernandez went on to affirm that he had spoken about all possible defenses to the charges against him with his attorney. Prior to accepting the pleas, the district court asked, "Do you have any questions, Mr. Hernandez?" to which Hernandez responded, "No, sir."

In his brief on appeal, Hernandez attempts to recant the affirmations he gave to the district court during the plea hearing. He argues that he had not, in fact, had enough time to discuss with his attorney prior to entering his pleas and that he had not discussed all possible defenses with his trial counsel. He argues that as a result of counsel's failures, he entered into the plea agreement when he otherwise would not have. However, and as we noted above, a defendant cannot secure relief by recanting assurances made to the trial court during the sanctity of a full and formal court proceeding "'after the doors of the prison clang shut.'" *State v. Vanderpool*, 286 Neb. 111, 118, 835 N.W.2d 52, 58 (2013).

For the sake of completeness, we do note that at one point during the proceedings, Hernandez requested that the district court appoint new counsel for him, and at the same time, he filed a pro se motion to discover. In his brief, Hernandez argues that when asked by the district court about discovery, his trial counsel "did not confirm that all of the discovery materials that were provided from the State were thereafter provided for Hernandez' review." Brief for appellant at 19.

Hernandez' claims regarding counsel's alleged failure to communicate with him and review discovery materials appear to be disingenuous. At the hearing on trial counsel's motion to withdraw, Hernandez' attorney stated that he had "spoken to [Hernandez] on the phone or in jail probably 15 times at least" prior to filing a motion to suppress, that he had gone over the court's order denying the motion to suppress with Hernandez in person, and that he had discussed the State's plea offer with Hernandez "several times." Counsel indicated that the reason he had filed a motion to withdraw was because "Mr. Hernandez does not wish to listen to a single word that I say." Hernandez does not dispute the accuracy of these statements on appeal. Given this, it seems likely that any deficiencies in Hernandez' communications with his attorney were not the fault of counsel. Moreover, by the time of the plea hearing less than a week later, Hernandez had changed his mind regarding his satisfaction with counsel and the quality of communication he and counsel had had. As we discussed above, Hernandez affirmatively indicated to the court at the plea hearing that he had sufficient time to discuss the case with his attorney and that he had discussed all possible defenses with counsel prior to entering his pleas.

Because the record refutes Hernandez' allegations that his trial counsel failed to communicate with him and to review discovery materials prior to the plea hearing, he is entitled to no relief.

### (c) Failure to Investigate Potential Exculpatory Witness

Hernandez next argues that his trial counsel was ineffective for failing to investigate Mike Lopez, a potential exculpatory witness who allegedly came forward after the plea hearing but prior to sentencing. Hernandez alleges that "if called to testify, Lopez would testify that after the plea hearing, Lopez communicated to trial counsel and to the deputy county attorney that Lopez was actually the house occupant in possession of the narcotics and weapons that Hernandez was charged with." Brief for appellant at 20. He further alleges that "prior to the sentencing hearing trial counsel advised Hernandez that this new information had come too late, and that someone had to go down for what was found inside of the home." *Id.*

It is not clear what information Hernandez and his defense counsel obtained regarding this potentially exculpatory witness, nor when they learned of his existence. Furthermore, it is unclear what Lopez' testimony would have been. We determine that the record on direct appeal is insufficient to address this particular claim of ineffective assistance of counsel.

### 2. Excessive Sentence

Hernandez argues that the district court imposed excessive sentences. Hernandez was convicted of one count of possession of a deadly weapon by a prohibited person in violation of Neb. Rev. Stat. §§ 28-1206(1)(a) and (3)(b) (Reissue 2016), a Class ID felony; and one count of possession of methamphetamine with the intent to distribute, 140 grams or more, in violation of Neb. Rev. Stat. §§ 28-416(1)(a) and (10)(a) (Reissue 2016), a Class IB felony. A Class ID felony carries with it a possible penalty of a mandatory minimum of 3 years' imprisonment to a maximum of 50 years' imprisonment, and a Class IB felony carries a possible penalty of 20 years' to life imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Hernandez was sentenced to 10 to 15 years' imprisonment on the count of possession of a deadly weapon by a prohibited person and a

consecutive sentence of 20 to 25 years' imprisonment on the count of possession of methamphetamine with the intent to distribute. These sentences are well within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Because the sentences were within the statutory limits, the question is whether the district court abused its discretion. Hernandez argues that the district court considered "incorrect facts" when determining its sentencing. Brief for appellant at 21. He alleges that the court mischaracterized the evidence in this case during the sentencing hearing. Hernandez further argues that "the district court did not give sufficient consideration to Hernandez' mentality, education, social and cultural background, motivation for the offense, and lack of violence involved in the commission of the crime." *Id*. at 22.

However, the record shows that the district court did consider appropriate mitigating factors, including those Hernandez points to in his brief. Prior to pronouncing its sentence, the court stated that it had considered the presentence investigation report prepared by the probation office, which included details regarding Hernandez' childhood and background. However, the district court found that any mitigating factors contained within the presentence investigation were outweighed by other factors in this case. Specifically, the district court pointed to Hernandez' significant criminal history, his prior gang involvement, and the fact that the probation office's assessment found Hernandez to be at "maximum risk for violent behavior, antisocial behavior, and aggressiveness." The district court concluded that Hernandez was "extremely dangerous."

Additionally, the record shows the district court did not rely on "incorrect facts" when sentencing Hernandez. Hernandez claims that when the district court, in summarizing the evidence in this case, stated that when police arrived at Hernandez' residence, "they found several shell casings in the driveway of the house with a trail of shell casings leading to [Hernandez] on the front porch of the house," it relied on inappropriate presumptions that Hernandez had fired the weapon that discharged the shell casings. However, the court did not state that Hernandez had fired a weapon; rather, the court was noting the factual context that gave rise to Hernandez' convictions. The district court then went on to note that after Hernandez was arrested, "a significant amount of cocaine and methamphetamine was found inside the house, along with several firearms and ammunition for firearms." Hernandez does not challenge the accuracy of this statement on appeal, and these are the specific facts that underlie his convictions.

The record reflects that the district court considered the appropriate factors in deciding Hernandez' sentences. There is no indication that the district court took into consideration any

inappropriate factors in reaching its sentencing determination. Therefore, the sentences imposed by the district court do not constitute an abuse of discretion.

## VI. CONCLUSION

We conclude that the district court did not abuse its discretion in sentencing Hernandez to consecutive terms of 10 to 15 years' imprisonment and 20 to 25 years' imprisonment on the two counts in this case, and we determine that his sentences were not excessive. We also conclude that Hernandez' first four claims of ineffective assistance of counsel fail and that the record is insufficient to address the fifth claim. Accordingly, Hernandez' convictions and sentences are affirmed.

AFFIRMED.